# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| ACULOCITY, LLC, | ) | |
| | ) | No. 17-CV-2868 |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Judge Thomas M. Durkin |
| | ) | |
| FORCE MARKETING HOLDINGS, LLC, | ) | |
| | ) | |
| *Defendant.* | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Aculocity, LLC ("Aculocity") alleges Defendant Force Marketing

Holdings, LLC ("Force") breached the parties' Master Services Agreement by failing

to pay for services performed. Before the Court now is Force's motion for partial

summary judgment. For the following reasons, Force's motion is granted in part and

denied in part.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317,

322-23 (1986). The Court considers the entire evidentiary record and must view all

of the evidence and draw all reasonable inferences from that evidence in the light

most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir.

2018). To defeat summary judgment, a nonmovant must produce more than a "mere

scintilla of evidence" and come forward with "specific facts showing that there is a

genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## STATEMENT

The facts relevant to this opinion are largely undisputed. Aculocity is a data management software developer and consultant. Force is a provider of marketing services to automobile dealers. On August 14, 2015, the parties entered into a Master Services Agreement ("MSA"), whereby Aculocity agreed to perform certain professional software development services for Force.

Aculocity allegedly completed the work but Force was unsatisfied and refused to pay Aculocity for its services. The parties terminated their relationship. Aculocity then filed this suit alleging Force breached their contract and misappropriated Aculocity's trade secrets both by continuing to use Aculocity's source code without payment and by disclosing the source code to third parties. Aculocity's amended complaint includes six causes of action—breach of the MSA for failure to make payments (Count I); breach of a confidentiality provision in the MSA (Count II); breach of a non-solicitation provision in the MSA (Count III); copyright infringement (Count IV); misappropriation of trade secrets under the Illinois Uniform Trade Secrets Act (Count V); and misappropriation of trade secrets under

the Defend Trade Secrets Act (Count IX).[1] For its breach of contract claims, Aculocity seeks "loss of revenue" for Force's failure to pay for the services performed, "loss of revenue" for Force's use of Aculocity's software after the termination of the agreement, and punitive damages. For its copyright infringement claim, Aculocity seeks damages in addition to recovery of Force's profits under 17 U.S.C. § 504(b), punitive damages, and statutory damages under 17 U.S.C. § 412 of the Copyright Act. Aculocity also generally seeks actual damages, lost profits, consequential damages, interest, costs, and reasonable attorney's fees, as well as injunctive relief requiring Force to return Aculocity's source code, among other things not relevant here.

Rather than engaging in discovery, Force filed a motion for partial summary judgment asking the Court to find as a matter of law that Aculocity's damages were limited to only the amount it was to be paid under the contract. In support, Force cites to the MSA's limitation of damages clause, which states:

> In no event will either party be liable for consequential, incidental, indirect, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages.

R. 52-1 ¶ 9(d).

The parties do not dispute that the clause is enforceable. In Illinois, parties can limit remedies and damages for breach if their agreement so states and no

---

[1] Aculocity withdrew Counts VI, VII, and VIII during briefing of a previous motion. *See* R. 35 at 5 n.1.

public policy bar exists. *Rayner Covering Sys., Inc. v. Danvers Farmers Elevator Co.*, 589 N.E.2d 1034, 1037 (Ill. 1992). Although limitation of damages clauses are not favored and must be strictly construed against a benefitting party, the basis for their enforcement is the strong public policy favoring freedom of contract. *Id.* With these principles in mind, the Court turns to Aculocity's claims.

### 1. Breach of Contract Claims (Counts I to III)[2]

Contract damages are measured by the amount of money needed to place the plaintiff in the same position as if the contract had been performed. *In re Illinois Bell Tel. Link-Up II,* 994 N.E.2d 553, 558 (Ill. App. Ct. 2013). Along with this general principle, there is a distinction between direct damages and consequential damages. "Direct damages," also called "general damages," are "[d]amages that the law presumes follow the type of wrong complained of." *Westlake Fin. Grp., Inc. v. CDH-Delnor Health Sys.*, 25 N.E.3d 1166, 1174 (Ill. App. Ct. 2015) (citing Black's Law Dictionary 394 (7th ed. 1999)). "Consequential damages" are losses or injuries that do not flow directly and immediately from a party's wrongful act but rather result indirectly from the act. *Id.*

As to Aculocity's breach of contract claims, the parties do not dispute that Aculocity is entitled to direct damages it incurred as a result of Force's breach. They do dispute, however, whether lost profits are recoverable as direct damages. However, whether lost profits are direct damages depends on their degree of foreseeability. *See id.* at 1174-75; *Midland Hotel Corp. v. Reuben H. Donnelley*

---

[2] Aculocity does not dispute that it not entitled to punitive damages or attorney's fees under its breach of contract claims.

*Corp.*, 515 N.E.2d 61, 67 (Ill. 1987) (lost profits were direct damages when the defendant failed to properly include plaintiff's advertisement in a newly published telephone directory); *Rexnord Corp. v. DeWolff Boberg & Assocs., Inc.*, 286 F.3d 1001, 1004 (7th Cir. 2002) (citing general contract law). That determination is premature at this stage because the parties do not describe what damages Aculocity seeks. For example, the only specific measure of damages in the complaint is for Aculocity's "loss of revenue" for Force's failure to pay for the services performed and for Force's use of Aculocity's software after the termination of the agreement. Those damages seem to be direct damages resulting from Force's breach. It is unclear whether Force intends to dispute those damages as lost profits. Regardless, because the Court has no other knowledge as to how Aculocity was injured, the Court cannot find as a matter of law that Aculocity's lost profits (if it incurred any) are barred under the MSA as consequential damages.

Force also argues that the MSA explicitly bars lost profits damages, regardless of how they are characterized. That argument fails because it does not comport with the language of the MSA. "If the language of a contract is clear and unambiguous, the intent of the parties must be determined solely from the language of the contract itself." *Palm v. 2800 Lake Shore Drive Condo Ass'n*, 10 N.E.3d 307, 328 (Ill. App. Ct. 2014) (citing *Virginia Surety Co. v. Northern Insurance Co. of New York*, 866 N.E.2d 149 (Ill. 2007)). "That language should be given its plain and ordinary meaning and the contract enforced as written." *Id.*

Here, the plain reading of the clause demonstrates that "loss of profits, data,

business or goodwill" in the limitation of liability clause are meant to be examples of the general categories of damages, *i.e.* "consequential, incidental, indirect, punitive or special damages." *See Westlake*, 25 N.E.3d at 1175 (phrase "indirect, incidental, consequential, special, punitive or exemplary damages, . . . such as, but not limited to, loss of revenue or anticipated profits or lost business" barred the recovery of only consequential lost profits, not direct lost profits). Like the contract in *Westlake*, the use of the phrase "including loss of profits, data, business or goodwill" is meant to illustrate the types of consequential damages barred by the contract, and is not meant to preclude the recovery of direct lost profits. *Id.* at 1178 (the "more general term informs the subsequently listed examples, not the other way around, and so lost profits here refer only to those that are 'a part or component' of the larger group or class of consequential damages.") (citing *Penncro Associates, Inc. v. Sprint Spectrum, L.P.*, 499 F.3d 1151, 1156 (10th Cir. 2007)).

Force cites to *Tate & Lyle Americas LLC v. Glatt Air Techniques, Inc.*, 2016 WL 7422289 (C.D. Ill. May 20, 2016), to argue that the MSA intended all lost profits to be barred by the limitations provision. *Tate* is not analogous. The contract in *Tate* barred "special, indirect or consequential damages" except for in situations of "gross negligence, willful misconduct, property damage or personal injury (including death)." *Id.* at *2. The court found that the parties "should have specifically included lost profits and lost business opportunities" if they intended those to be recoverable consequential damages like they did with property damage or personal injury damages. *Id* at *3. Importantly, the court stated that all lost profits or lost

6

business opportunities in that case were consequential damages, rather than direct damages from the alleged breach. *Id.* at *5.

Here, on the other hand, it is not yet clear that Aculocity's lost profits are consequential damages. For that reason, the Court does not find that Aculocity's lost profits are barred as a matter of law. Force's motion on this issue is denied.

### 2. Damages under State and Federal Statutes (Counts IV, V, and IX)[3]

Along with its breach of contract claims, Aculocity also seeks damages for copyright infringement under 17 U.S.C. § 504(b) (Count IV) and damages for misappropriation under the Illinois Trade Secrets Act, 765 ILCS 1065/4 (Count V) and the federal Defend Trade Secrets Act, 18 U.S.C. § 1836(b)(3)(B) (Count IX). Force argues that damages under these statutes are barred as a matter of law because the MSA bars recovery of consequential, incidental, indirect, punitive or special damages "regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise." R. 52-1 ¶ 9(d).

The clear language of the MSA does not indicate the parties intended to bar recovery of damages granted to Aculocity by statute. While it is possible to contract to avoid tort liability, general exculpatory clauses will not bar recovery for damage resulting from intentional, negligent, or reckless misconduct, unless it is clear that the parties intended that effect. *Berwind Corp. v. Litton Industries, Inc.,* 532 F.2d 1,

---

[3] Aculocity does not dispute that it not entitled to punitive damages or attorney's fees under its copyright infringement claim. Aculocity also does not dispute that it is not entitled to statutory damages under 17 U.S.C. § 412 of the Copyright Act because its copyright was not registered before Force's alleged infringement.

5 (7th Cir. 1976) (citing Illinois caselaw). If there is any doubt as to the meaning of an exculpatory clause, the party seeking its protection cannot be said to have carried his burden. *Id*. at 6.

Here, while the clause unambiguously limits tort claims for consequential, incidental, indirect, punitive or special damages based on the parties' *contractual* duties, the MSA does not bar damages based on violations of statutes containing duties *independent* of the contract. The MSA uses contractual measures of damages (such as "consequential," "special,"[4] or "incidental") within the limitation of liability clause, suggesting the clause intended to limit the parties' recovery under the contract. *Id*. at 8 ("By using contractual measures of damages the seller did not clearly indicate any intent to foreclose tort damages."). Although the clause states that it applies regardless of whether such liability is based on "tort, . . . or otherwise," that does not suggest the parties intended to bar recovery for rights provided for by state and federal statutes. Instead, it suggests that the parties intended to limit recovery from tortious (and other) violations of the MSA.

Further, the remainder of the MSA indicates the parties did not intend to bar damages from statutory violations. Illinois's principle of contract interpretation "requires that [courts] give effect to all contract terms." *Miniat v. Ed Miniat, Inc.*, 315 F.3d 712, 715 (7th Cir. 2002); *see also Selective Ins. Co. of S.C. v. Target Corp.*, 845 F.3d 263, 267 (7th Cir. 2016) ("We must also seek to give effect to each clause

---

[4] Although "special damages" are used in both a tort (for example, in libel actions) and contract context, courts have concluded that when "special" is coupled with "consequential" as here, the two terms are synonymous. *Berwind,* 532 F.2d at 7-8 (7th Cir. 1976).

and word used, without rendering any terms meaningless"). The MSA requires Aculocity to carry general liability insurance with limits up to $1 million per occurrence and a $2 million annual aggregate. R. 52-1 ¶ 9(i). This provision indicates the parties contemplated that Aculocity could have liability several times greater than the amount paid between the parties under the contract. If the parties intended to bar damages from any statutory violations, there would be little need for Aculocity to carry such insurance coverage. Perhaps discovery will clarify this issue.

The Court does not find as a matter of law that the parties intended to bar damages based on statutory duties related to copyright infringement and misappropriation. Force's motion on this issue is denied.

### 3. Illinois Misappropriation Claim (Count V)

Finally, Force argues that Aculocity cannot recover in unjust enrichment under the Illinois Trade Secrets Act, 765 ILCS 1065/4, because the parties are not competitors. The Act allows parties to recover damages for misappropriation including both the actual loss caused by the misappropriation and any unjust enrichment not taken into account in computing actual loss. Nothing in the language of the Act requires parties to be competitors to recover damages for unjust enrichment. The case Force cites in support of its argument, *Web Commc'ns Grp., Inc. v. Gateway 2000, Inc.,* 1994 WL 171448 (N.D. Ill. May 3, 1994), discussed the correct measure of damages specific to that case. It did not hold—nor did it cite to any pertinent authority—that unjust enrichment damages are barred when a trade

secret claim is brought against non-competitors. Accordingly, Force's motion on this issue is denied.

## Conclusion

For the reasons explained above, the Court grants Force Marketing Holdings, LLC's motion for partial summary judgment [49] in part. Aculocity is barred from recovering attorney's fees and punitive damages under its breach of contract and copyright infringement claims. Aculocity is also barred from recovering statutory damages under 17 U.S.C. § 412 of the Copyright Act. Force's motion is otherwise denied.

ENTERED:

_Thomas M Durkin_
_____

Dated: February 21, 2019

Honorable Thomas M. Durkin
United States District Judge